UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Case No.: 6:17-cr-00228-GAP-TBS-1 |
| vs. | |
| JONATHAN JETT, Defendant. | Orlando, Florida February 27, 2018 10:00 a.m. |

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

APPEARANCES:

Counsel for Plaintiff: Kara M. Wick
U.S. Attorney's Office
400 West Washington Street
Suite 3100
Orlando, Florida 32801

Counsel for Defendant: Susan M. Malove
Malove Law, PA
390 North Orange Avenue
Suite 2300
Orlando, Florida 32801

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

Court Reporter: Heather Jewett, RPR, FCRR
Federal Official Court Reporter
401 West Central Boulevard, Suite 4600
Orlando, Florida 32801
e-mail: heatherjewett.focr@gmail.com

TABLE OF CONTENTS

February 27, 2018

PROCEEDINGS

| | |
|---|---|
| Motion by the United States for Downward Departure of Defendant's Sentence Based Upon Substantial Assistance [76] | 4 |
| Argument by Ms. Malove | 6 |
| Statement by the Defendant | 11 |
| Argument by Ms. Wick | 11 |
| Rebuttal Argument by Ms. Malove | 13 |
| Statement of Reasons | 15 |
| Judgment of the Court | 17 |
| United States' Motion for Entry of Order of Forfeiture [69] | 19 |
| Judgment of the Court (Cont'd) | 19 |
| All Objections Preserved by Ms. Malove | 20 |
| Voluntary Surrender | 20 |
| Appeal Rights | 20 |
| Certificate of Reporter | 22 |

P R O C E E D I N G S

(Call to order of the court.)

THE COURT: Okay. Lisa, call the case.

THE COURTROOM DEPUTY: This is in the matter of United States of America v. Jonathan Jett. Case No. 6:17-criminal-228-Orlando-31TBS.

THE COURT: Okay. And appearing for the Government?

MS. WICK: Good morning, Your Honor. Kara Wick on behalf of the United States. With me is Special Agent Dave Brown of FBI.

MR. BROWN: Good morning.

THE COURT: Thank you.

And for the defendant?

MS. MALOVE: Susan Malove on behalf of Jonathan Jett, Your Honor. He's seated beside me at counsel table.

THE COURT: All right. Thank you.

MS. MALOVE: Thank you.

THE COURT: Well, we're here again for this matter, and this time I have read Defendant's sentencing memorandum. I've actually reviewed everything again.

So let me just briefly state for the record what I have reviewed: The presentence investigation report at Document 67 I reviewed, which also contains a sentencing recommendation from the probation officer, and that

recommendation suggests a term of 24 months. But since that time, also now I have a motion by the United States for a downward departure under 5K1.1, requesting the Court depart two levels based on the defendant's substantial assistance. And we'll take that motion up in a minute. And I have now read Defendant's sentencing memorandum at Document 71, and then we also have a motion for entry of an order of forfeiture at Document 69. And I think that's the extent of the written documents that I have up here.

So Mr. Jett pled guilty to Count 1 of the superseding indictment in this case, charging him with conspiracy to commit wire fraud in violation of 18 United States Code, Sections 1349 and 1343. And the PSR scores Mr. Jett as a 16-I. And that's computed with a base of 17, adding 2 for vulnerable victims, gets you to 19, and subtracting 3 for acceptable responsibility is a 16-I. And that would suggest a term of between 21 and 27 months.

I would note for the record that -- not really a codefendant, but a coculprit in a separate case, Mr. Mika, received a sentence of 24 months; and as I said, the probation officer recommended 24 months in this case.

So I think that the first thing we need to do is take up the United States' motion for substantial -- a departure for substantial assistance.

So, Ms. Wick, is there anything else you wish to say

in that regard?

MS. WICK: Your Honor, I would just rely on the motion. The defendant has been cooperative with the United States. He sat down and proffered and provided information regarding Cassandra Padgett, specifically, information regarding her involvement that the United States would not have otherwise known because it involved activities where only the defendant was present. And I believe that following the proffer report being delivered to Padgett's attorney, Padgett decided to plead guilty, and I believe that that proffer had -- had a significant amount to do with Padgett's decision to not put the Government to its burden and take this to trial.

THE COURT: All right. Thank you.

Ms. Malove, any comment from you?

MS. MALOVE: Your Honor, I'd only add that Mr. Jett wished he was in a position to do more.

And with regard to Mr. Mika's case, he was initially contacted around the same time as Mr. Mika was originally charged, and he had retained counsel, who had received a plea agreement from the Government, but it was never relayed to him. So until the time that he was picked up, he did not know that that had been conveyed, and there was a significant time lapse there. So as soon as he did, again, find out that the case was open and pending, he received the plea agreement and,

you know, wanted to do everything he could.

THE COURT: Okay. All right. Well, I'll grant the Government's motion, depart two levels. That brings us down to a 14-I, which suggests 15 to 21 months; one to three years' supervised release; restitution in the amount of 127,461.06; a fine of between 5,000 and 254,000; and a $100 special assessment. So those are the --

THE PROBATION OFFICER: Your Honor, the fine does not actually change. The guideline may have been adapted, and then the 5K will only change the guideline range.

THE COURT: Right. I didn't change the fine. I didn't -- I mean, I --

THE PROBATION OFFICER: You said 2,500, and the restitution should be 5,000.

THE COURT: No. I said 5,000 to 254,000, I think.

THE PROBATION OFFICER: Sorry. I thought you said 25 -- I'm sorry. I thought you said 2,500.

THE COURT: No. Well, I may have, but if I did, I was mistaken. I meant to say 5,000.

THE PROBATION OFFICER: Thank you.

THE COURT: All right. So with that in mind and with the new score of 14-I, a benchmark of 15 to 21 months, I'd be happy to hear from counsel or the defendant.

MS. MALOVE: Thank you, Your Honor. I'd like to point out a few things in my motion, and I also have a few --

THE COURT: Podium.

MS. MALOVE: Sure.

Would you like my client to join me, Your Honor?

THE COURT: I'm sorry? What?

MS. MALOVE: Would you like my client to come to the podium as well?

THE COURT: No, no. He's fine there.

MS. MALOVE: Okay.

THE COURT: But when you're speaking at the podium, it just helps the court reporter and everybody hear at the podium.

MS. MALOVE: Thank you. No problem.

With regard to my sentencing memorandum and my motion for a downward variance, although the Government has now allowed the Court to depart downward to the 15- to 21-month range, we still believe that's greater than necessary to meet the sentencing factors set forth in 3553. And I'd like to mention a few things in my memo in detail as well as a couple additions that have transpired since the time this was filed, since sentencing was pushed back a little bit.

The first thing is I'd like to point out that this offense completed in October 2012, which was 5.5 years ago at this point, and since that time Mr. Jett's taken the initiative to 100 percent put his life on a straight and narrow path. Mostly that's exemplified in his work. He's

taken his first job in electrical work in 2013, then in 2014 got a job with another electrical company for three years straight, and after he got that job, he also enrolled in online school, where he completed a college degree in occupational safety and health with a 3.9 GPA. So I think that sets him apart from the standard with regard to the guideline sentence. And after earning his degree, he continued on in the electrical field to do even more, go above and beyond, and started working for FPL.

After doing all of that, he's been able to get into the program for his journeyman license to join the union, which would take four years to complete, and the issue is that, if Mr. Jett were to be incarcerated, he would obviously lose that job. And the only way he's kept the job with this case pending and now being a convicted felon is basically by being grandfathered in. So if he was to be incarcerated, he's never going to be able to get that position back with FPL and getting into the union.

In addition -- obviously, you've read the memo -- he has children that he's supporting, some with special needs, and his employment is of the utmost concern to his family because, if he goes into custody, then his fiancée is not going to be able to stay home with their special needs child and her child that she's homeschooling. She would need to seek other employment, obviously, to support the family, and

then their child would be suffering because of it.

Also in my memo I pointed out that the codefendant, Ms. Padgett, had filed a petition for modification of their parenting plan, which was set to be heard on February 20th, which was identified in the presentence report.

THE COURT: And what happened?

MS. MALOVE: That petition was voluntarily dismissed by Ms. Padgett because of her ongoing DCF investigation. And the investigator from DCF, Ron -- I can't remember his last name at the time, but the gentleman I spoke to indicated that he was waiting for this sentencing to occur before he moved forward with finalizing Ms. Padgett's portion of the DCF investigation because he was hoping that the children would be able to live with the defendant full time. And because of that, Ms. Padgett withdrew her petition for modification to the parenting plan. So I would submit to you that, based on DCF's involvement and their position at this time, they believe that the defendant is the better caregiver for the children between the two of them.

And I know that, obviously, I don't have him here today or anything concrete for you, but I did speak to him, and due to the fact that it's an ongoing investigation, he was hesitant to put anything in writing and did not want to appear on behalf of either party because it's not his role. So I apologize for that.

But with regard to the sentence today, Your Honor, I would just like to emphasize that these children are relying on the defendant for support as well as the overall parenting role. Ms. Padgett is also going to be before the Court for sentencing. So it's not as if it can be overlooked with regard to this defendant. You know, they need to either be with DCF or with one parent or the other, but I'd submit to you that Mr. Jett is an appropriate parent for these children, and he's supporting them financially. He's done everything he can with regard to his career and his education to put himself in a much different position than he was five and a half years ago when this ended.

And based on all those factors as well as the photos, the letters that you've received, I think it shows that he is a good father. That is the utmost concern in his life. He's doing everything he can to show you that a sentence of 15 to 21 months is greater than necessary to meet the goals of sentencing. He is not going to be a danger to the community. He is not a danger of reoffending, and he submits that a sentence of probation, 48 months, or even up to the maximum followed by supervised release would do everything necessary to meet the goals of sentencing in this case.

THE COURT: All right. Thank you.

MS. MALOVE: Thank you, Your Honor.

THE COURT: I'd be happy to hear from Mr. Jett. And

you can -- you can stay seated there. Just speak into the mic, sir, if you wish to allocute.

THE DEFENDANT: Excuse me, Your Honor.

THE COURT: That's all right. Take your time. We can take a break, if you need to.

THE DEFENDANT: No. I'm okay.

Your Honor, I love my children. I've done everything I can to turn my life around. Please let me stay with them. I've worked very hard to change everything about my life: the people in it, what I've done. I work very hard every day for my family. I want to be there for them.

Thank you.

THE COURT: Thank you, sir.

Ms. Wick.

MS. WICK: Your Honor, the United States is seeking a low-end guideline sentence of 15 months.

I know the Court had presided over the coconspirator's sentencing, but just regarding the seriousness of the offense, between June 2011 and October of 2012, Jett and his coconspirator sent false and fraudulent insurance applications to UnitedHealthcare in order to obtain commissions based on those false and fraudulent applications. Specifically, they scammed UnitedHealthcare out of over $100,000.

There were individual victims as well because some

of the PII that was used to carry out the scheme to defraud was that of elderly or deceased victims. Specifically with regard to the elderly victims, when the fraudulent insurance applications were submitted to UnitedHealthcare, in some cases the insurance for those elderly victims was actually impacted and cut off for a period of time.

Jett and his coconspirators took advantage of their position as licensed insurance agents. They used the PII not just of previous insurance clients but also of other insurance agents to submit the application in other people's names. They created a craigslist ad to recruit different insurance agents to try and use their names and also to open accounts into which the fraudulently obtained commissions would go.

Jett specifically tried to get individuals, including his then girlfriend Padgett, to open bank accounts. They would then alter the checks from those bank accounts to make it appear that those accounts were in the names of other insurance agents.

So, Your Honor, the seriousness of this offense is significant considering the amount of money, the number of victims, and how this scheme was carried out. And for that reason, Your Honor, I do believe that a term of imprisonment is required in this case.

With respect to the history and characteristics of the defendant, however, the United States recognizes that the

defendant has minimal criminal history as far as convictions go. He does have numerous arrests but minimal convictions.

With respect to how he is situated with -- in comparison to Mr. Mika, I do believe that Jett and Mika were similarly situated with respect to this scheme and their involvement in this scheme. However, I would note for the Court a difference in Mr. Jett's history and characteristics moving forward past this scheme. It does appear that Mr. Jett has turned his life around as far as his family life and his education. He's had no run-ins with the law or arrests since the time of that scheme was carried out in 2011 and 2012.

As I've already noted for the Court, however, I do believe there is a need to reflect the seriousness of the offense to provide just punishment and adequate deterrence and that a low-end guideline sentence would do that in this case, Your Honor.

THE COURT: Ms. Malove, anything else?

MS. MALOVE: Yes, Your Honor. As a final point just in response to the Government's position seeking the low-end guidelines as opposed to a probation sentence, I'd just like to point out one of the cases cited in my memo: *United States v. Whitehead*. It's 532 F.3d 19 -- or 991 from the Ninth Circuit. I just wanted to point out that it did uphold a probation sentence for a guideline range of 41 to 51 months, which is much, much higher than Mr. Jett's today, and that was

based on the Court finding the defendant was remorseful, employed, supporting his daughter, and no longer posing a threat to the community. So --

THE COURT: It's also doubtful that the Eleventh Circuit would view that sentence in the same manner but --

MS. MALOVE: Understood, Your Honor. I just wanted to point out that there are factors here that may outweigh the seriousness of the offense with regard to what's an appropriate sentence, and I think Mr. Jett has done everything possible to put himself in the position for a probation sentence.

Also, with regard to the arrests that the Government referred to, I did address that in my sentencing memorandum. Those were a lot of worthless check cases that kept getting dismissed because it was due to the defendant's bank account issues with his child support being removed from his account, and he wasn't well informed, which is not an excuse, but they did not find it to be criminal. So I'd just ask the Court to consider that, that his only actual convictions are with regard to driving offenses, and since the time of this offense, he hasn't even received a traffic ticket.

Thank you.

THE COURT: All right. Thank you, Ms. Malove.

Well, I -- I keep hoping, after 17 years of doing

this, that sentencing would get easier, but it doesn't.

So as counsel knows, what I do up here in trying to reach a reasonable, just, and appropriate sentence in each case is to first compute the guideline score, which here is 15 to 21 months as a result of the Government's 5K motion, and the Government argues for a low-end sentence of 15 months. So with that as a benchmark, I can consider the statutory factors, two of which are primary -- or usually primary, and that is the seriousness of the offense and the history and characteristics of the defendant.

With respect to the offense here, that is an aggravating factor, in my view, because the offense was serious. It was long-standing. It involved coconspirators engaging in fraudulent conduct over a lengthy period of time and also had vulnerable victims involved. So I don't think there's any question but that the offense itself was serious.

With respect to the history and characteristics of the defendant, I think we have some mitigating -- it's a mitigating factor here in the sense that Mr. Jett has obviously done everything he can to turn his life around, improve his employment prospects, be a good father, stay out of trouble. And all of that, as you know, under Supreme Court case law may be considered in mitigation of -- of the sentence and in termination of the sentencing factors.

The other -- the other factors in 3553(a) don't bear

a lot of weight here in terms of deterrence. Specific deterrence -- I don't think that's a factor. I don't believe Mr. Jett will reoffend. I take his remorse as being serious and genuine, and I don't think he's a threat to the public. In terms of general deterrence, the fact that there should be punishment is a deterrence. The length of that punishment, however -- there's no social science that -- that supports the notion that the more -- that a more serious sentence would provide more general deterrence to others. So I don't give a whole lot of weight to deterrence.

The other factor that is in play here is sentencing disparity because we have a codefendant, Mr. Mika, who was sentenced within the -- within the guideline, as a matter of fact, met a guideline, I think, sentence. And here Mr. Jett's role in the offense itself was equivalent to that of Mr. Mika. But I think, as recognized by the Government, there is some mitigation here that separates Mr. Jett from Mr. Mika in terms of how he has led his life since -- since these charges were filed. It's unfortunate that it took this long to get to this point, but here we are.

The defendant argues for a nonincarcerative sentence. Defense counsel makes a compelling argument based primarily on the innocent victims of this, which is often the case, in that being the family members who -- who rely on the support of the defendant. And we have an added complication

here of a dispute between Mr. Jett and his ex-wife concerning childcare and custody, which I'm not in a position to resolve. But it is a complicating factor, and I'll have to deal with Ms. Padgett when I deal with Ms. Padgett.

The bottom line here is that the seriousness of this offense is such that -- that a pure probationary sentence, in my view, is not -- is not possible. Even if I were to do that -- I don't think I've got the discretion to do that -- in the Eleventh Circuit, I think, it would be reversed. So I'm going to have to impose a sentence of incarceration. The low end is 15 months. The best I can do is a year and a day, and I will do that in light of the mitigating circumstances that have been put before me.

So having considered the matter thoroughly, including argument of counsel and allocution of the defendant, the judgment of the Court: The defendant, Jonathan Jett, is committed to the custody of Bureau of Prisons to be imprisoned for a term of one year and one day.

Upon release from prison, Mr. Jett, you'll serve a term of two years of supervised release. While on supervision, you must comply with the standard conditions adopted by this Court. In addition, because of the restitution obligation, you'll be prohibited from incurring new credit charges, opening lines of credit, or obligating yourself for any major purchases without the approval of your

probation officer. You must also provide your probation officer with access to any requested financial information.

It is ordered that you cooperate with the collection of DNA. Mandatory drug testing is waived.

It is ordered that you pay restitution in the amount of $127,461.06 to UnitedHealthcare. This restitution obligation shall be payable to the Clerk of the Court for distribution to the victim. Restitution shall be paid jointly and severally with Matthew Mika in Docket No. 6:17-cr-47 and with the sentence imposed on Ms. Padgett in Docket No. 6:17-cr-228.

While in the Bureau of Prisons' custody, you shall pay either $25 quarterly if you have a non-UNICOR job or at least 50 percent of your monthly earnings if you have a UNICOR job.

Upon release from custody, you shall pay restitution at the rate of $300 per month, and that payment schedule shall continue until such time as it is changed by the Court as a result of any change in your financial circumstances. The Court waives interest on the restitution amount. The fine is waived.

After considering the advisory guidelines sets forth in Title 18 United States Code, Section 3553(a), the Court finds that this sentence is sufficient but not greater than necessary to comply with the statutory purposes of sentencing.

Court accepts the plea agreement, and in accordance therewith, Count 2 of the superseding indictment is dismissed, and the underlying original indictment is also dismissed.

Is there any objection to the sentence or the manner in which the Court has pronounced sentence?

Ms. Wick?

MS. WICK: No objection, Your Honor. I would just ask -- the United States filed a motion for forfeiture at Document 69. I would ask that that be granted and included in the judgment.

THE COURT: Yes.

Any objection to the motion for forfeiture --

MS. MALOVE: No, Your Honor.

THE COURT: -- Ms. Malove?

All right. The Government's motion for forfeiture in Document 69 is granted. I have signed the order of forfeiture dated today, and that order is included in the judgment of sentence.

Apparently, I overlooked the special assessment of $100. It's not included in here but -- yes, it is. I'm sorry. It's further ordered the defendant shall pay the United States a special assessment of $100, which shall be due immediately.

The forfeiture is -- issue is resolved.

Any objection, Ms. Malove, to the sentence?

MS. MALOVE: Your Honor, for the record, he'd like to preserve all objections. Obviously, this is not the sentence that he requested; so he's objecting on the basis that he believes a probationary sentence would have been reasonable. But I will, you know, discuss that with him for the 14 days that he has to appeal.

THE COURT: Okay. To the extent that's a renewed objection, it's overruled.

Any objection to voluntary surrender, Ms. Wick?

MS. WICK: No, Your Honor.

THE COURT: All right. Mr. Jett, you can -- I will allow you to voluntarily surrender to the institution designated by the Bureau of Prisons. It is ordered that you report to that institution no later than 2:00 p.m. on the tenth day following your notice of designation. If that day falls on a weekend or federal holiday, then you must report by 2:00 p.m. on the following business day.

You have the right to appeal this judgment and sentence within 14 days from today. If you fail to appeal within that period, it will be a waiver of your right to appeal. The Government can also appeal the sentence.

You're entitled to the assistance of a lawyer in taking an appeal. If you cannot afford a lawyer, one will be provided for you.

And I'm sure Ms. Malove can answer any other

questions you have about your appeal rights.

Is there anything else I need to address before we adjourn?

MS. WICK: Not from the Government. Thank you, Your Honor.

THE COURT: Ms. Malove?

MS. MALOVE: Your Honor, would the Marshals' Office be able to give a date for the designation for his turn-in? Or is that something --

THE COURT: They won't know until the Bureau of Prisons -- the Bureau of Prisons will notify the Marshal --

MS. MALOVE: Okay.

THE COURT: -- and then the Marshal will tell you he's been designated as so-and-so. And from that date, he's got ten days to report.

MS. MALOVE: Okay. Thank you.

THE COURT: It can take weeks.

MS. MALOVE: Yeah. That's my understanding.

THE COURT: All right. Thank you.

Good luck to you, sir.

We're in recess.

(Proceedings concluded at 10:32 a.m.)

* * *

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

/s/ Heather Jewett
Heather Jewett, RPR, FCRR
Official Court Reporter

03/21/2018
Date